Opinion issued July 14, 2026



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00853-CR

————————————

**DAVID WAYNE ELMORE, SR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Case No. 23-CR-0789

## MEMORANDUM OPINION

A jury convicted Appellant David Wayne Elmore, Sr. of murder. Appellant contends he was entitled to a lesser-included-offense instruction. We affirm.

## Background

Appellant's family owns real property in Galveston County with "a bunch of trailers" on it. Although he did not live there at the time of the murder, Appellant

had lived on the property most of his life, and several members of Appellant's family continued to live there.

About two months before the murder, Joseph "Jody" Garcia began living on the property. According to Appellant, Garcia "just showed up" on the property after being temporarily homeless for a few weeks. During those two months, Appellant and Garcia were involved in three heated arguments that did not lead to physical fights.

At the property on the evening before the murder, Appellant saw Garcia arguing with a woman and told him to leave. In response, Garcia tried to fight Appellant. Appellant began walking away, but Garcia "attacked [him] from the back," placing Appellant in a headlock and choking him. Appellant testified Garcia was "talking shit in my ear the whole time he was choking me to death," saying he was going to "fuck my mother, my sister, and my daughter." Appellant testified he could not breathe during the attack and went unconscious. When he regained consciousness, Appellant saw other people holding Garcia down. Appellant attempted to "go back after" Garcia with a pipe, but his uncle prevented him from doing so and instead struck Appellant with the pipe. Appellant did not call the police but went home.

The following morning, the power was out at Appellant's home, so he left to have coffee with relatives. He carried a gun because "my life was just strangled

out of me the day prior" and he continued to feel "very threatened." According to Appellant, Garcia "was the threat." Appellant testified he "figured [Garcia] was going to be there" but "hoped he wasn't."

Appellant first went to his mother's home, but she did not have coffee. He then went to his grandfather's home on the family property. Appellant testified he visits his grandfather "every morning" he is not working, so he went to the property even though he knew Garcia might be there and was still a threat.

When he got there, Appellant asked two relatives if Garcia was there because Appellant "definitely didn't want him coming up behind me again." Appellant explained that although he was in fear of Garcia, he was actively seeking Garcia because he "was worried about where [Garcia] was" and "didn't want to be assaulted by him again." Appellant later told police he wanted to "make sure [Garcia] was gone."

The relatives told Appellant that Garcia might be in the house, so Appellant "went in the house looking for him." Appellant did not find Garcia in the house, so he went into the backyard to look for Garcia. Appellant found Garcia in the backyard doing push-ups. Per Appellant, he feared Garcia would attack him and "somebody might not save my life again," at which point "instinct took over." Appellant could not recall if he and Garcia exchanged words, and Appellant

3

"wasn't even thinking about hearing him." Appellant was "thinking about killing" Garcia.

Appellant walked toward Garcia and drew his gun, at which point Garcia stood up. Appellant shot at Garcia multiple times, taking the first shot "before he even completely got up." The first two shots missed, and Garcia began moving behind a tree. Appellant's third shot hit Garcia in the back, causing him to squat. At that point, Appellant was about five feet away from Garcia, and he fired three more shots into Garcia's head.

Appellant testified it was his "intention to kill [Garcia]," he was "of course" thinking about killing Garcia immediately before shooting him, and he hoped every shot would kill Garcia. A witness to the shooting testified Appellant fired the last two shots "execution style," and that Appellant was "laughing his ass off" as he fired the shots. Garcia died at the scene.

Appellant fled before the police arrived. An officer later found Appellant about six blocks from the scene and arrested him at gunpoint. The officer told Appellant that arresting him with his gun drawn "wasn't personal" but was for safety reasons because the officer "had a family to go to." Appellant responded, "That's why I killed that motherfucker today." Appellant also told the officer "there was a lot building up to him killing [Garcia]," including that a family member told Appellant that Garcia had been caught "sleeping with a child."

Appellant told the officer he "didn't feel bad" about killing Garcia and that "maybe he does need to go to jail so he doesn't hurt anybody else." The officer testified Appellant was concerned the shooting would interfere with his right to own a firearm.

During a jailhouse call, Appellant told his mother, "I shot him where I buried the fucking dog. How about that? I don't give a shit," and "You don't have the right to try to do something to me and expect me not to fucking try to finish it. You should either kill me or don't try to do it." In another call, Appellant told his grandfather, "If he tried to kill me, he better get the job done because as long as I got breath in me, I'm going to try to kill you, period."

Appellant was indicted and tried for murder for "intentionally or knowingly caus[ing] the death of . . . Garcia, by shooting [him] with a firearm." At the charge conference, the trial court agreed to instruct the jury on self-defense.[1] Appellant also asked for a lesser-included-offense instruction on manslaughter. The trial court denied this request, explaining "there would have to be something in the record that [Appellant] recklessly caused Mr. Garcia's death," and "I'm not seeing anything that raised even a scintilla that he was reckless."

---

[1] Appellant testified there was a machete near Garcia's hand at the time of the shooting. But when shown a picture of the crime scene, Appellant agreed he did not see a machete in the picture.

5

The jury convicted Appellant of murder and sentenced him to twenty-seven and a half years in prison. The trial court entered judgment on the verdict.

## Analysis

Appellant contends the trial court erred by refusing his request for an instruction on the lesser-included offense of manslaughter. "We review the trial court's decision regarding including a lesser-included offense in the jury charge for abuse of discretion." *Brock v. State*, 295 S.W.3d 45, 49 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

"In determining if the jury should be charged on a lesser offense, this Court applies a two-step analysis." *Segundo v. State*, 270 S.W.3d 79, 90 (Tex. Crim. App. 2008). "First, we decide if the offense is a lesser-included offense of the charged offense," which is a question of law. *Id.*; *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). "The second prong of the test then requires an evaluation to determine whether some evidence exists that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense." *McKinney v. State*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006).

## A.    Second prong not met

We start with the second prong because the State agrees manslaughter is a lesser-included offense of murder. Under this prong, if "facts are elicited during trial that raise an issue of the lesser-included offense, and the charge is properly

requested, then a charge must be given." *Cavasos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012). "Regardless of the strength or weakness of the evidence, if any evidence raises the issue that the defendant was guilty only of the lesser offense," then the defendant is entitled to an instruction on the lesser-included offense. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).

The standards for whether evidence is sufficient to *convict* a defendant of an offense are "quite different" from the standards for giving a lesser-included-offense *instruction*. *Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009). "The evidence could easily be legally sufficient to support a conviction for a lesser-included offense but not justify the inclusion of a lesser-included-offense instruction because the evidence does not show that the defendant is guilty *only* of the lesser-included offense." *Id.* at 909–10. We review all the evidence to determine whether the record contains anything more than a scintilla of evidence that the defendant could be guilty of only the lesser-included offense. *Cavasos*, 382 S.W.3d at 385; *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

### 1.    Murder and manslaughter

Both manslaughter and murder (as charged in the indictment) are "result-oriented" offenses. *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) ("Manslaughter is a result-oriented offense[.]"); *Anaya v. State*, 381 S.W.3d 660, 664 (Tex. Crim. App. 2012) ("Murder, whether intentionally or knowingly

committed, is a result oriented offense."). Thus, to commit either offense, a defendant's culpable mental state must be directed toward the result of his conduct (the death of an individual) rather than toward the conduct itself (the shooting). *See Cockrell v. State*, 721 S.W.3d 448, 454 (Tex. Crim. App. 2025).

The mental state required for murder is that the defendant acts "intentionally" or "knowingly." TEX. PENAL CODE § 19.02(b)(1). A person acts "intentionally" with respect to a result of his conduct "when it is his conscious objective or desire to . . . cause the result." *Id*. § 6.03(a). A person acts "knowingly" with respect to a result of his conduct when he is "aware that his conduct is reasonably certain to cause the result." *Id*. § 6.03(b). Thus, to commit murder intentionally as charged here, Appellant must have had a conscious objective of causing, or desire to cause, Garcia's death. To commit murder knowingly as charged, Appellant must have been aware that death was reasonably certain to result from his shooting Garcia.

The mental state required for manslaughter is that the defendant acted "recklessly." *Id*. § 19.04(a). A person acts "recklessly" with respect to the result of his conduct "when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id*. § 6.03(c). In this case, the relevant inquiry is whether there is "some evidence" in the record that Appellant

was "reckless . . . about the likelihood that a death would occur at the moment he shot" Garcia. *Cavasos*, 382 S.W.3d at 385; *Mays*, 318 S.W.3d at 387.

**2. There is no evidence to support Appellant acted only recklessly**

Appellant argues the following testimony supports his request for the manslaughter instruction: (1) Appellant believed Garcia remained a future threat to him and his family and thus carried a gun that morning; (2) Appellant was concerned Garcia might be found anywhere in the general vicinity and could sneak up and choke Appellant again, and maybe nobody would save Appellant's life this time; and (3) Appellant returned to the property that morning to have coffee, as he did every morning, and not because he was affirmatively seeking out Garcia.

This testimony does not support submission of manslaughter. There are two ways evidence might indicate a defendant is guilty of only a lesser-included offense: (1) evidence can "refute[] or negate[] other evidence establishing the greater offense," and (2) "the evidence presented regarding the defendant's awareness of the risk may be subject to two different interpretations, in which case the jury should be instructed on both inferences." *Cavazos*, 382 S.W.3d at 385.

Appellant testified he intended to kill Garcia when he shot him, and the cited testimony does not refute or negate that admission. It relates instead to Appellant's ongoing fear of Garcia *before the shooting* and the reasons he armed himself and returned to the property *before the shooting*. This testimony does not address, let

9

alone allow for competing interpretations of, Appellant's awareness of the risk of Garcia's death. The evidence does not relate to Appellant's mental state at the time he pulled the trigger.

Appellant next argues his testimony that his "instinct took over" when he first saw Garcia exercising in the backyard, supports that he acted only with recklessness. We assume Appellant is contending this evidence supports that he had no cognizance of what he was doing at the time of the shooting. The Court of Criminal Appeals has held that a defendant was not entitled to a manslaughter instruction based on his testimony that he "'blacked out' and had no recollection of actually shooting the victim" and thus "was not aware of having caused the victim's death at the time of the shooting." *Schroeder v. State*, 123 S.W.3d 398, 401 (Tex. Crim. App. 2003). The defendant's testimony about "blacking out" was "no evidence that would permit a jury to rationally find that *at the time of the firing of the gun*, the [defendant] was aware of, but consciously disregarded, a substantial and unjustifiable risk that the victim would die as a result of his conduct." *Id*. (emphasis in original). To the contrary, "it is difficult to understand how a person may 'consciously disregard' a risk of which he is unaware." *Id*.

The only other evidence of Appellant's mental state at the time of the shooting is his testimony that he "didn't want to kill" Garcia. But not wanting to kill someone is not the same as not intending to kill them, nor would this testimony

"convince a rational jury to find that if Appellant is guilty, he is guilty of only the lesser-included offense" of manslaughter. *Cavazos*, 382 S.W.3d at 385 ("Pulling out a gun, pointing it at someone, pulling the trigger twice, fleeing the scene (and the country), and later telling a friend 'I didn't mean to shoot anyone' does not rationally support an inference that Appellant acted recklessly at the moment he fired the shots.").

We conclude there is no evidence from which a reasonable jury could find Appellant was acting only recklessly at the time he shot Garcia. The trial court did not abuse its discretion by refusing to instruct on the lesser-included offense of manslaughter. We overrule Appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).